## Commonwealth v. Ozelek

*Gailey C. Keller, District Attorney,* for Commonwealth.
*John A. Mihalik,* for defendant.

MYERS, *P. J.,* January 7, 1975—This 59-year-old defendant was arrested in June 1974 for operating his motor vehicle while under the influence of intoxicating liquor. At the time of the arrest, no other vehicles were involved and there were no personal injuries nor property damage.

Defendant has had no previous similar arrests and his past driving record has been free from convictions.

Defendant has no apparent severe drinking problem. However, immediately prior to his arrest, he had somewhat overindulged in intoxicants. His overindulgence was caused in part, at least, by some mental depression due to the recent death of his wife.

For the past 30 years, defendant has been steadily employed in the Berwick area. During that time, he has driven his automobile to his place of employment from his residence in Catawissa, R.D. 1, and return, which amounts to some 50 miles per day. Obviously, it is of great economic importance to defendant that he continue to operate his automobile at least to and from work.

Following his arrest, defendant, through his attorney, filed a motion with this court to be accepted into the Accelerated Rehabilitative Disposition Program, presumably with the hope that the court

would, under the scope of this program, spare him his operator's license.

By way of background, the Accelerated Rehabilitative Disposition Program (hereinafter called ARD) originated in Philadelphia County in 1971 with the approval of the Pennsylvania Supreme Court, primarily to help alleviate the staggering backlog of criminal cases in that county. The ARD Program has met with varying degrees of acceptance by county courts in the Commonwealth. The general practice has developed in most courts, including this one, to include within the scope of the ARD Program certain minor property crimes and small scale drug offenses, and to exclude from the ARD Program all major crimes and crimes of violence.

The theoretical purpose of the ARD Program is to endeavor to eliminate the need for lengthy motions, trials and other court proceedings in cases which are relatively minor, or which involve social or behavioral problems which may sometimes be best solved by rehabilitative programs and treatment, rather than by punishment.

When applying the ARD Program (the maximum term of which is two years), the presiding judge has almost unlimited discretion in imposing conditions, rules and guidelines to which defendant must adhere. If defendant complies with all the rules, conditions and guidelines during the term of the ARD Program, as set forth by the judge, he may subsequently earn dismissal of the charges filed against him.

In so-called "drunken driving" cases, county courts in Pennsylvania are markedly divided as to the use and application of the ARD Program.

Many county courts have refused to apply the

ARD Program in such cases, while others have utilized ARD in drunken driving cases to impose a wide variety of conditions upon defendant.

Most county courts which do apply the ARD Program in drunken driving cases impose conditions upon defendant which may include restricted licenses and/or shorter term suspensions than those mandated by the Secretary of the Department of Transportation.

Those courts conclude, in effect, that the wide judicial discretion inherent in the ARD Program authorizes the court to impose operator license restrictions and/or suspensions to a degree to fit the equities of the individual case in so-called drunken driving matters.

Obviously, it can be argued that such judicial action has considerable merit.

On the other hand, courts which have refused to apply the ARD Program in such cases have concluded that the motor vehicle operator's licensing regulations, including restricted licenses, suspensions and/or revocations, are strictly matters for the legislature to determine. We agree, for the reasons hereafter stated.

Parenthetically, it may be noted that recently the legislature of the Commonwealth once again refused to pass a statute providing for restricted operator's licenses under certain circumstances.

Without debating the merits of restricted operator's licenses, we believe that regulations in this matter must come from the legislature, because only in this way can Statewide regulations be uniformly and equally applied to each motor vehicle operator throughout the entire State.

Whatever his moral convictions may be, one must recognize the widespread existence of adult social drinking of intoxicants in our nation as well

as in our area. Short of public drunkenness, such drinking of intoxicants is not prohibited by law.

However, what the law does prohibit is one's operating a motor vehicle after he has consumed intoxicants in such an amount as to impair his normal judgment, reflexes and coordination, thereby creating a danger to other lawful users of the highway.

Concededly, there are often thin lines of distinction to be drawn in these cases, creating multiple problems for the court to adjudicate.

Yet, while it is true that penalties for violation, including loss of one's operator's license, may be harsh and economically devastating to defendant, we must balance this unfortunate circumstance against the vital necessity of keeping our highways reasonably safe for the lawful users thereof. Certainly, the statistics pertaining to loss of life caused by intoxicated drivers are well known.

In passing, it may be noted that when this court took office three years ago, we increased the fines in drunken driving case convictions, and imposed jail sentences for second and subsequent offenders. Frankly, it has become clear that this approach has been something less than successful as a deterent to this complex problem. In fact, the number of so-called drunken driving cases coming before this court seems to be ever-increasing. However, it may or may not be significant that the number of repeaters is minimal.

In any event, we believe it to be patently unfair that the ARD Program is applied in drunken driving cases in some counties of the Commonwealth and not in others. Thus, obviously, our drunken driving laws are clearly not being uniformly applied throughout the Commonwealth. For example, why should a Philadelphia County drunken driver re-

tain his operator's license via ARD while a Montgomery County drunken driver loses his for the same offense under similar circumstances, and so on from county to county.

In short, it appears that the ARD Program in drunken driving cases in certain counties, inter alia, is being applied as a device to circumvent the Commonwealth's motor vehicle licensing rules and regulations. These motor vehicle licensing rules and regulations, in our opinion, are matters for the legislature to determine and should be uniformly applied throughout the Commonwealth.

For these reasons, we refuse to grant the motion for ARD in so-called "drunken driving" charges.

In conclusion, we hope that the legislature and judiciary will move quickly to correct these obvious inequities and provide for a uniform application for our so-called drunken driving laws throughout the Commonwealth.

Accordingly, we make the following

## ORDER

And now, January 7, 1975, defendant's motion for Accelerated Rehabilitative Disposition is denied.